Number seven this morning is United States against Bostock. Mr. Hillis. May it please the court. Again, I hope. My name is Daniel Hillis. I'm with the Federal Public Defender's Office. I represent Mr. Bostock. And I'd like to start with the standard of review. I'm mindful of what the court said during the second oral argument of today. We have similar issues here with respect to standard of review. And there's been a flurry of 28 J letters citing both Burroughs and Pennington. And I don't intend to recite things that were largely said on the topic. Other than to note that standard of review is very important because it's determinative oftentimes of the outcome of the case. And we should not be wedged into plain air review when in a circumstance like this, we have somebody who filed a sentencing memorandum, made arguments in the court. The judge reached the point where she had heard everything, rejected the basis for the variance, which I think is important by way of context, as Judge Scudder had asked about earlier in the day, and then immediately proceeded to the imposition of sentence. The judge was not going to get moved off the mark. There's nothing further for a repeat performer like my office is to egg the judge on for additional explanation, try to move it off its mark to say to the judge, you know, no, your explanation is not adequate. And I need to keep on with this game in order to preserve the issue. I don't think that that's where we want to go on these cases. Everything that was needed to be done to preserve the issue was done here. And this is not a circumstance that results then in a different standard of review other than what we asked for. Unless the court has further questions on that, I'll note only this other thing. And that is, by way of the asserted plein air review, when the judge doesn't state until her time in the courtroom that she's relying on the harm to the environment, availability of that enhancement as a basis for the imposition of sentence, how is it that Mr. Mullins could have done anything different than what he did other than say to the judge, I understand your reasoning, and then point out on the appeal that she's wrong as to that factor because not everybody gets that guideline enhancement. In fact, very few get it. I think he said it's 0.6% of all cases. He couldn't have known that until he did his research in this case. And again, we believe that everything has been adequately preserved for purposes of today's review and argument. Going then to the merits. The judge procedurally erred when she relied on her speculation that ice is more valuable and dangerous than other forms of methamphetamine. Judges aren't supposed to speculate, and the judge clearly did here. She said as much in the record, and I believe that's at page 28 of the transcript. She relies on that to impose sentence. That's speculation that she's relied on to impose sentence, and that's improper. I think the judge was responding to the defense argument that the guidelines range was bad because the ice guideline is bad as being insufficiently supported by empiricism and for other policy reasons. I understood the district judge to be simply explaining why she was not going to go down that road and disagree with the ice guidelines, which set the 10 to 1 ratio or whatever it is. It's some exaggerated ratio to standard meth cases because she didn't buy the argument that there's bad policy going on. And so she was kind of summarizing her thinking on that, but not trying to make factual findings or interject any particular new facts into the proceeding. But she did, and that's the problem. So she was trying to come up with an alternative rationale for the sentence and say why, even if I were to accept your argument here, here's why I wouldn't give the sentence that you asked for and incorporates in her explanation about the existence of this enhancement that everyone gets. And yet the evidence is she's wrong. Very few people get this, Judge. So by baking in that explanation into her counter example, and she was going on the fly on this, as best we can tell. The government didn't file a sentencing memorandum, and so these weren't arguments that it made. The judge made them, and Mr. Mullins was doing his best to address the judge's concern on these points, but he had no alternative other than to do what he did in this case by way of pointing out that that was an errant assertion by the judge. As for rejecting the efforts for a variance because this would frustrate drug enforcement, that was also something the judge said. And of course we covered the variance in addition to the assumption that everyone gets this enhancement in addition to her assertion that this is more valuable and more dangerous. And there's no evidence, of course, on that. The problem then comes down to by saying all that she did, inclusive of the errors that we assert, she's not addressed, though, the three things that Mr. Mullins has pointed out in his brief. And that was when he's asking the judge not to credit a particular guideline and gives specific examples, the three that I just gave, about why it should be discredited in the particular case. That makes, under Aguilar Huerta, responsibility on the judge to now address something as opposed to dismissing the argument out of hand to say it's merely a challenge to the guidelines. And so the government's brief pursues that and says essentially the government, essentially argues that the judge is bound to reject the contest of a particular guideline. But that's not so under Aguilar Huerta when somebody has given specific examples about why the guideline isn't applicable here when somebody is not a producer of methamphetamine, is a mid-level dealer as opposed to a wholesale producer that warrants the sort of guideline range that the commission has established for this particular offense. That's what happened here, and that was the procedural error. And I don't think that there's any way to read the record other than in support of the request for the remand. I have nothing further reserved to balance my time for rebuttal. Mm-hmm.  Good morning, Your Honors. May it please the Court. Mr. Bostock has waived or at least forfeited his three challenges to the district court sentencing procedure. And we've discussed that earlier with the reference to Burroughs and the fact that the defendant did not express further objection when he was asked if he'd like further elaboration or when he was asked if all of his principle arguments in mitigation had been addressed. But even if this Court finds otherwise that the plain error standard does not apply, Mr. Bostock has failed to demonstrate any error with regard to, first, the district court's statement that by supplying ICE methamphetamine, Mr. Bostock circumvented law enforcement's crackdown on domestic labs. And second, the district court's statement that had Mr. Bostock been convicted of manufacturing methamphetamine domestically rather than distributing ICE methamphetamine, he likely would have received a three-level enhancement for substantial risk of harm to the environment. And even if there is not support in the district court record for the district court's statement on the correlation between the purity and the value and the danger of ICE methamphetamine, that's far from being a critical fact that the district court relied on in sentencing. This is a case involving a mid-level methamphetamine dealer who was dealing out of a home with young children. Multiple controlled buys took place there. And in that home, surveillance video, a loaded gun, and other drug-dealing paraphernalia was also found. None of these allegedly erroneous statements, individually or collectively, prejudiced Mr. Bostock, which is clear from the district court's thorough discussion of the 3553A factors that led to its rejection of the defendant's request for a one-third variant based on policy reasons. I'd like to first turn to the district court's comment that by acting as a mid-level dealer of ICE methamphetamine, Mr. Bostock circumvented successful legislative efforts to reduce domestic manufacturing. First, Mr. Bostock does not claim that the court's statement was factually inaccurate, and that should doom his claim of pure error. The district court has broad discretion here to decide what is and is not an aggravating factor. Mr. Bostock doesn't argue, which he must argue, that no reasonable jurist could agree with the district court's view that his role as an ICE dealer was an aggravating factor. As the district court noted, this is a defendant who previously manufactured methamphetamine in the 1990s and has two Iowa convictions for pseudophedrine precursor purchases. The reason, likely, that Mr. Bostock has switched from this pseudophedrine practice is due in part to legislation that cut down on the number of mom-and-pop labs in the United States, which were then supplanted by super labs from Mexico. Mr. Bostock's own attorney has described him as a mid-level dealer of ICE, and it's certainly clear that a reasonable jurist could conclude that his dealing of ICE aided in circumventing successful legislative actions that reduced the supply of methamphetamine from domestic labs that used to be more prevalent in the Midwest. Regarding the substantial risk of environmental harm, Mr. Bostock has also challenged the district court's statement that if this were a domestic lab manufacturing case, he likely would receive a three-level enhancement for the risk of environmental harm. To shore up that argument, Mr. Bostock is relying on statistics that apply to all drug cases across the United States. This is not even just methamphetamine cases, let alone just methamphetamine manufacturing cases, where we might think that this enhancement would apply. This is every drug case, so I don't think those statistics are on point to this discussion. Furthermore, we have a judge here who is a former prosecutor who sits in the Central District of Illinois who is well aware of the numerous methamphetamine manufacturing cases that occurred in the mid-2000s and has previously observed that the mom-and-pop labs were more prevalent before the crackdown. We can't expect her to come to the bench with an empty judicial mind, and I think it was certainly reasonable for her to infer that these mom-and-pop labs that this environmental enhancement would apply. I also think it's important to note that even if this were considered an error, the judge had already rejected the defendant's policy argument at the time it went over this hypothetical guideline range and made it clear that this hypothetical range might be more accurate if she were going to discount the increased penalty. So it was more of an alternative basis than the set reason for her sentence. In your honors, to assume for argument's sake that the court did draw an impermissible inference when it said the stronger or more pure the drug, the more valuable, that was 11 words among an entire sentencing transcript of more than 13 pages, and it did not constitute critical and accurate information. The court made clear that it rejected Mr. Bostick's request for one-third variance not only because it disagreed with the Hayes case in Iowa, but also because the 3553A factors led the district court judge to believe it was unmerited, which included the defendant's lifelong criminality, the fact that he had been a consumer, he had facilitated the manufacture of methamphetamine, he was now a mid-level dealer, the seriousness of the offense of conviction, the presence of young children in the home, his escalating conduct which included violence, criminal conduct on court supervision, criminal conduct despite extensive psychiatric care, the fact that he was a habitual offender and his extreme recidivism risk. Your Honor, if you have no questions, I'll rest on the argument in our brief. Thank you. Certainly, Ms. Boyle. Anything further, Mr. Hillis? No. The problem about reliance on incorrect and accurate information is we don't know how it shapes the sentencing decision. That's why that information needs to be kept out at all times. Which 11 words here are the most important in the case to shape the judge's imposition of sentence? The defense was asking the judge to go down this road of disagreement with the policy underlying the guidelines range for the reasons announced by another district judge in a published case. But there was no factual record that anybody, either side, was making for an empirically based policy disagreement. So sort of garbage in, garbage out. All they were doing is saying do what this other judge did in this published decision without attempting to mount an evidentiary case for a policy disagreement with the guidelines. There's a problem with that, though, is that the judge is acting to undergird what her inclinations are in important information from her time as a prosecutor. She's doing the same... She's explaining in an experiential way why she is not going to venture a disagreement with the guidelines and how it treats ICE cases as opposed to standard meth cases. But she wasn't being given an evidentiary record to disagree. She was making one, apparently. She's the one who offered the evidence based on her experience. This was not in the nature of an evidentiary discussion or an injection of facts. It was an explanation of her view that there was no real reason, based on her experience with these kinds of cases, to engage in a policy disagreement as the other judge had done. Even so, she has interjected in the government's offer that the 11 words weren't essential. And when we're talking about the value of drugs and the dangerous impact, you would think those are essential things for the imposition of sentence. The judge was incorporating these in her explanation sentence. They're unsupported. They're speculative. That, I think, is the problem, Judge, but I understand your point. Again, there's no way for us to separate out what the improper information is and how it impacts sentence. The better, of course, is if we need evidence, it should be presented by the parties, not offered by the judge. It wasn't done here, and we are left with the record that we have that is inclusive of the judge's speculation. And that, of course, resulted in the imposition of sentence we think is improper. We ask you to vacate and remand. Thank you. Thank you very much. The case is taken under advisement.